38 C.C.P.A.(Patents)

## Application of HELTZER.
### No. 5792.

United States Court of Customs
and Patent Appeals.
June 5, 1951.

Robert I. Coulter, St. Paul, Minn., (George I. Haight, Chicago, Ill., and Carpenter, Abbott, Coulter & Kinney, St. Paul, Minn., of counsel) .for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner, to whom we hereinafter refer as the examiner, of all the claims, numbered 11 to 15, inclusive, embraced in appellant's application for patent for alleged "new and useful improvements in Highway Marking Paint Containing Glass Beads."

Claims 11, 12, 13, and 14 are directed to a paint containing certain described pigments with which there is an admixture of minute transparent glass beads, the product as a whole being adapted to be sprayed on highway surfaces in lines marking the center of the highway and, where desired, in lines outlining traffic lanes and safety zones. Claim 15 is for the method of applying the paint product described therein, the method defined being by spraying.

In view of the grounds of rejection, we here reproduce claims 11, 14, and 15:

"11. A quick-drying reflective highway marking paint essentially comprising a drying-oil-base varnish containing a brilliantly reflective pigment and additionally containing magnesium silicate pigment adapted to provide a false-body, the pigment volume ratio being about 25 to 45%, and a suspended admixture of transparent glass beads having an average diameter of the order of about 3 to about 10 mils and present in the proportion of about 3 to 8 pounds per gallon of bead-free paint, the beaded paint being adapted to be sprayed on highway surfaces subject to vehicular traffic to provide durable reflex light-reflective traffic markers which have a high night-time visibility to motorists."

"14. A quick-drying pigmented reflective highway marking paint adapted to bond to highway surfaces and resist weathering and traffic wear, characterized by containing a suspended admixture of transparent glass beads having an average diameter of the order of about 3 to about 10 mils, the proportions of pigment and of glass beads being correlated so that the beaded paint is adapted to be sprayed on highway surfaces subject to vehicular traffic to provide durable reflex light-reflective traffic markers which have a high night-time visibility to motorists.

"15. A single-step method of providing reflex light-reflective markers on highway surfaces, which comprises spraying upon a highway surface subject to vehicular traffic a coating of quick-drying pigmented reflective highway marking paint containing an admixture of transparent glass beads having an average diameter of the order of about 3 to about 10 mils, the proportions of pigment and of glass beads being correlated so that the resultant dried beaded paint coating will provide a durable reflex light-reflective marker which has a high night-time visibility to motorists."

There are no limitations in claims 12 and 13 which distinguish them from the other claims in a patentable sense.

All the claims were rejected as unpatentable over the disclosures of a patent, No. 2,268,537, issued December 30, 1941, to Le-roy Shuger upon an application filed May 19, 1939.

That patent is the only prior art cited, and it presents the only ground upon which claim 11 was rejected.

The remainder of the claims were rejected additionally upon other grounds hereinafter stated.

It seems proper first to consider claim 11 and its rejection upon the Shuger patent standing alone. This patent embraces three claims all of which are for the product but, as stated in substance by the respective tribunals of the Patent Office, Shuger discloses a method of producing markings upon highways by first applying the paint defined in his patent claims in lines running on the surface of the highway and then sprinkling minute beads on the paint while it is in a tacky condition.

The beads applied to the wet paint by Shuger overlap in size those which appellant mixes in his paint before spraying it on the highway, and the pigment ingredients of Shuger's paint are substantially the same in quality and quantity as those of appellant.

Shuger's two-step method—that is, first applying the paint and then separately applying the beads on the wet paint—is disclosed clearly, although not claimed as a method, in his patent.

On the other hand, a disclosure of the application of appellant is that of premixing the beads with the paint and then applying the mixture in a single step. As has been stated, appellant presents claims for both the product and the method of applying it.

The purpose of the beads is to reflect light, particularly at night, and thus illuminate the painted lines.

The claims of the Shuger patent are for the "combined highway and lane line" resulting from the use of his paint plus the beads separately applied on it, as may be seen from his claim 2 which reads: "2. A combined highway and lane line comprising a road surface, a reflecting binder thereon comprising pigment, non-volatile oil, and resin, and a series of autocollimating units partially embedded in said binder, the ratio

by volume of pigment to pigment, non-volatile oil, and resin being less than 50 per cent."

Appellant's claims (except No. 15) are for the product containing various elements, including beads, which have been mixed together. The elements, including the beads, are named also in claim 15, which is in method form.

It should be distinctly understood that the tribunals of the Patent Office did not rely upon the disclosure of the two-step method in the Shuger patent as an anticipation of the appealed claims which negatived invention on the part of appellant.

Their rejection of claim 11 is grounded solely upon their interpretation of certain phraseology appearing in Shuger's specification from which interpretation they concluded that Shuger, as expressed by the examiner, made "a clear disclosure of the concept of a premixed marker paint containing glass spheres."

The examiner said: " * * * The point at issue is whether Shuger discloses *a premixed paint* containing the glass beads, or merely the formation of the highway marker by a two-step application such as has been previously described." (Italics supplied by us.)

It seems to us that the question may be stated quite simply as follows: Does Shuger clearly and distinctly disclose a paint which has transparent glass beads as part of its composition in its finished state and before it is used in forming lines to serve as highway markers?

That is what appellant discloses and claims, and we are of opinion, upon the facts here appearing, that the Shuger patent must show that in order properly to be regarded as a pertinent reference.

In order to answer correctly the question so posed, it is necessary to interpret the phraseology of the Shuger specification, which impresses us as being somewhat ambiguous.

With respect to "whether Shuger discloses a premixed glass bead containing paint," the examiner quoted the whole of the second paragraph and a part of the third paragraph of the Shuger specification reading:

"Prior to the instant invention it has been suggested that glass spheres be laid in a paint when the latter is in a semi-dry or tacky condition. This procedure has not always proven satisfactory for in some cases the spheres sink down to the base on which the paint has been applied and when this condition occurs, the marker will not act as desired for no reflecting medium will be about the lower portions of the spheres which is absolutely essential for autocollimation.

*"It has further been suggested that center lines and lane lines on roadways which are subjected to vehicular traffic be fabricated of paint incorporating minute glass spheres* but such lines have been relatively short-lived for the spheres soon become disengaged from the paint * * *." (Emphasis added by the examiner.)

We are of opinion that the text of the remainder of the third paragraph, paraphrased but not quoted by the examiner, is of aid in construing this portion of the Shuger specification, and it seems that the continuity of thought and the sense of the language may be preserved best by quoting it at this point to be read in connection with the part which the examiner quoted: " * * * and the corresponding autocollimating [that in the self-redirection of the line of light] effect which the spheres attribute to the lines is lost. The presence of autocollimating units such as glass spheres in a lane line protects the paint or reflecting binder from wear due to vehicular traffic and as long as the spheres are held to the paint or binder, the marker shows little wear but as soon as the spheres become dislodged, wear of the marker is accelerated."

The examiner further said: "Applicant [appellant here] argues very strenuously that the disclosure of 'a paint incorporating minute glass spheres' is ambiguous and reads upon a road line made by a two-step process as well as upon a premixed paint. He proceeds, therefore, to attempt to interpret this portion [of the] Shuger disclosure, on the basis of the rest of the Shuger disclosure as well as the Shuger file wrapper. It is believed however, that the

portion of the Shuger disclosure relied upon by the Examiner cannot be fairly interpreted to suggest anything but a premixed paint."

The board quoted verbatim only the particular language of the third paragraph reading, "It has further been suggested that center lines * * * on roadways * * * be fabricated of paint incorporating minute glass spheres * * *," and followed this quotation by asserting: The Examiner contends that this should be read as describing a paint which has glass spheres incorporated therein and that this composition is then used to fabricate the center lines, etc. * * *.

Then, after stating appellant's contention that the quoted matter "should be read to the effect that the center lines are fabricated by first applying paint and then incorporating the glass spheres on the painted line by applying thereto," continued: "* * * The Examiner apparently interprets the disputed language as referring to a practice other than that which the patentee [Shuger] himself intended to use. The Examiner was of the opinion that a disclosure by Shuger of a practice wherein the beads were incorporated into the paint prior to applying to the roadway was sufficient to defeat the claims notwithstanding that the patentee did not approve of such practice. We have given careful study to this question but are constrained to agree with the Examiner that Shuger sufficiently suggests incorporating, that is mixing, minute glass spheres with a paint. This suggestion is, we believe, sufficient to anticipate the claims here on appeal. The Examiner has pointed out that the paint, other than for the glass spheres, is completely anticipated by Shuger's paint. It therefore follows that the Shuger disclosure of the incorporation of glass beads into paint is sufficient to anticipate that aspect of the claimed subject matter.

In the final analysis, much seems to turn upon the meaning which is to be given to the word "incorporating" as used in the clause quoted by the board from the Shuger specification. Seemingly, the clause has been treated by the tribunals of the Patent Office as if it read: It has further been suggested that certain lines * * * on roadways * * * be fabricated of paint *having as one of its ingredients* minute glass spheres.

That does not seem to us to be the most natural and reasonable interpretation of the term "incorporating." One statement made by the examiner which, it is fair to assume, the board approved, although not specifically stating so, reads: "* * * Applicant's conclusions [that the phrase 'a paint incorporating minute glass spheres' is ambiguous and reads upon a road line made by a two-step process as well as upon a premixed paint] can be arrived at only by relying upon a great deal of speculation and by straining the ordinary connotations one would gather upon reading this disclosure."

█ We do not agree with this view. Upon the contrary, it seems to us that speculation and straining are required to limit the meaning of the phraseology to beads in a premixed paint. "Incorporating" normally is a participle. We think it obvious that it was used in its normal sense in the quoted clause and that it connotes incorporating glass beads on or into paint *after* the paint has been spread on the highway quite as readily as it connotes incorporating it *before* the paint is spread. We are of the further opinion, considering the state of the art at the time the Shuger application was filed, insofar as that state is disclosed by the record, in connection with the entire pertinent text of the specification, that Shuger more probably had the former in mind. In any event, the quoted phraseology seems to us to be insufficient to support a conception of appellant's clearly defined idea.

We do not overlook the statement of Shuger's objections to the "paint incorporating minute glass spheres" recited in the paragraph hereinbefore quoted, to the effect that lines made with such paint have been relatively short-lived for the spheres soon become disengaged from the paint, etc., but there is nothing in this statement which is inconsistent with the idea that the beads to which he referred were incorporated in the paint after it had been spread rather than before it had been spread. Shuger's paint was a new product unless

the Patent Office made a mistake in granting him a patent, and by reason of its nature as a binder, it may have held the beads applied to it more securely than paints of the prior art.

It is said in appellant's application: "Transparent glass beads have previously been used in spherulate highway markings and the like, but for such use *have invariably been applied in a separate operation to the exposed and still sticky surface of a previously applied paint film*. In this connection reference is made to the article 'Glass Beads for Road Stripes' published in Public Works, Vol. 75, page 18 (November 1944), wherein are mentioned several of the advantages to be obtained from this use of glass beads. See also the U. S. Patent to F. H. Korff, No. 2,043,414, issued June 9, 1936." [Italics supplied by us.]

"In addition to those previously known, I obtain the following advantages by means of my new and novel composition:

"1. The paint composition may be applied by simple spray or brush methods now available, without the necessity of modification of existing road-striping equipment of the spray or brush type as used for ordinary paints.

"2. The application is complete in a single step.

"3. The over-all cost of application is reduced.

"4. Improved distribution and bonding of the glass spheres is accomplished.

"5. Longer useful life of the coated strip is obtained.

"6. Loss of beads during application is avoided."

Appellant's contribution to the art of providing markings for the surfaces of highways, such as those herein described, consists of mixing beads with paint, before the paint is applied to the road surface. It may be conceded that the beads are old and that the paint is old, but no reference has been cited in which there is any showing of a paint containing beads as an ingredient in the premix.

There is no citation of any prior art which specifically discloses the existence, before appellant entered the field, of a ready mixed paint having glass beads as one of its ingredients, and we do not find ourselves in agreement with the tribunals of the Patent Office that a conception is shown by the phrase, "It has been further suggested," together with the phraseology which follows, hereinbefore quoted, which constitutes an anticipation of appellant's product. It is too vague and uncertain to constitute a concept. It would not, in our opinion, be honored ordinarily as establishing conception. It is not amiss to repeat that anticipation by the Shuger patent is the only ground of rejection of claim 11. There was no rejection of that claim, or in fact of any of the other claims, as failing to define invention *per se*. Were we to reject it on that ground, we would be regarded as exceeding our authority by applying a new ground of rejection.

The record in the case is an elaborate one and the brief for appellant contains numerous repetitions of thought and discusses some phases of the controversy which, under the view we take of the case, need not be discussed in this opinion.

We think claim 11 was rejected improperly below.

Claim 12 was rejected additionally as being "too broad and functional in the recitation of 'a false-bodying agent'." The only pigment named in the specification as adapted to provide a false-body appears to be asbestine, which is another name for magnesium silicate. Claim 12 recites broadly "a false-bodying agent," thus seeking to cover all false-bodying agents whatever their composition.

We think claim 12 was rejected properly upon the last named ground.

Claims 13 to 15, inclusive, were rejected additionally as unduly broad in that they failed to define the paint composition with sufficient particularity. Upon this phase the examiner pointed out that no specific vehicle (paint composition) class or type of vehicle was defined in the claims and said: " * * * While the specific vehicle may not be critical in a strict sense, it is obvious that not all vehicles would be suitable. Thus, to be satisfactory, the paint vehicle must be quick drying, must contain

reflective pigments and must form a durable, tenacious film. Not all vehicles possess such characteristics. Thus, water may be called a vehicle but obviously would be unsuitable. Applicant points to Example 3 on page 8 as showing a water-vehicle, but this example shows a resin emulsion vehicle containing water rather than water per se."

We do not think the board erred in approving the rejection of those claims upon that particular ground.

Claims 14 and 15 were rejected additionally "as functional in reciting the proportion of pigment and beads as adapted to provide the desired results." In view of the result flowing from our approval of other grounds of rejection of these claims, it is unnecessary that we pass upon this ground.

It is not amiss to point out that method claim 15 is not for a method of making appellant's paint but for a method—*spraying*—of applying his paint after it is made. Since spraying is a well known method of applying paint there certainly was no error in rejecting that claim upon that additional ground.

For the reasons stated, we affirm the decision of the Board of Appeals approving the examiner's rejection of claims 12 to 15, inclusive, but reverse its approval of the rejection of claim No. 11.

Modified.