**MINNESOTA MINING & MANUFACTURING COMPANY, a corporation of Delaware,**

v.

**Albert A. SHUGER, Julius O. Shuger Herbert B. Shuger, Herman H. Shuger, Leroy W. Shuger, Sewell J. Shuger, d/b/a Baltimore Paint & Color Works, a partnership, and Prismo Safety Corporation, Intervener.**

Civ. No. 6633.

United States District Court
D. Maryland.
May 25, 1955.

Hershey, Donaldson, Williams & Stanley, Roger A. Clapp, Baltimore, Md., Edward A. Haight, Chicago, Ill., and William H. Abbott and Robert I. Coulter, St. Paul, Minn., for plaintiff.

Markell, Veazey & Gans, Charles Markell, Jr., and George M. Radcliffe, Baltimore, Md., and Karl W. Flocks, Washington, D. C., for defendants.

COLEMAN, Chief Judge.

This is a patent infringement suit brought by the plaintiff, the Minnesota Mining & Manufacturing Company, a Delaware corporation, as assignee of United States Patent No. 2,574,971, for a highway marking paint containing glass beads, issued November 13, 1951, to Harry Heltzer (hereinafter referred to as the Heltzer patent). This suit is against six individual defendants, members of a Baltimore partnership doing business as the Baltimore Paint & Color Works, and owners of a United States Patent No. 2,268,537, for a road marker, issued December 30, 1941, to Leroy Shuger, one of the partnership members, hereinafter referred to as the Shuger patent. The plaintiff also charges an intervening party, the Prismo Safety Corporation, incorporated under the laws of Pennsylvania and a purchaser of the defendants' highway marking paint, with infringement of the Heltzer patent.

The defendants and the intervener admit that since 1947 their product has been substantially the same as that produced by the plaintiff, but claim that the Heltzer patent is void for several reasons hereinafter analyzed; and also the defendants counterclaim that plaintiff is a contributory infringer of the Shuger patent, for reasons hereinafter set forth.

The specifications of the Heltzer patent thus describe the alleged invention

which it embraces: "This invention relates to quick-drying highway marking paint adapted to be sprayed on highway surfaces subject to vehicular traffic to provide durable reflex light-reflective traffic markers (such as centerlines) which have a high night-time visibility to motorists. This reflective paint contains brilliantly reflective pigment and also contains admixed transparent glass beads (small glass spheres or sphericles). It makes possible a superior beaded type of highway surface marker and yet involves only a single-step application procedure, the paint and admixed beads being simultaneously coated on the highway surface.

\* \* \* \* \* \*

"In accordance with the present invention, there is provided a marking paint which may be applied in a single operation to form a wear-resistant coating containing glass beads uniformly dispersed and firmly bonded therein. The paint base is a quick-drying type pigmented with reflective pigments, the glass beads are transparent, and the composition is of a sprayable viscosity.

"Transparent glass beads have previously been used in spherulate highway markings and the like, but for such use have invariably been applied in a separate operation to the exposed and still sticky surface of a previously applied paint film.

\* \* \* \* \* \*

"In addition to those previously known, I obtain the following advantages by means of my new and novel composition:

"1. The paint composition may be applied by simple spray or brush methods now available, without the necessity of modification of existing road-striping equipment of the spray or brush type as used for ordinary paints.

"2. The application is complete in a single step.

"3. The over-all cost of application is reduced.

"4. Improved distribution and bonding of the glass spheres is accomplished.

"5. Longer useful life of the coated strip is obtained.

"6. Loss of beads during application is avoided.

"Contrary to expectation, and in accordance with the advantages above enumerated, I have discovered that the addition of glass beads to fluid paint compositions does not necessarily destroy the sprayability nor the stability of such paint, nor diminish the visibility or wearability of the beads-and-paint coated surface."

The Heltzer patent has only two claims, the second being somewhat broader than the first, and reading as follows: "A quick-drying pigmented-varnish reflective highway marking paint adapted to bond to highway surfaces and resist weathering and traffic wear, having a pigment volume ratio of about 25 to 45%, and characterized by containing a suspended admixture of transparent glass beads having an average diameter of the order of about 3 to about 10 mils and present in the proportion about 3 to 8 pounds per gallon of bead-free paint, the beaded paint being adapted to be sprayed on highway surfaces subject to vehicular traffic to provide durable reflex light-reflective traffic markers which have a high nighttime visibility to motorists."

The specifications of the Shuger patent thus describe the alleged invention which it embraces: "The invention relates to surface markers and more particularly to markers embodying a reflecting binder and transparent auto-collimating units (self-producing parallel rays of light).

"Prior to the instant invention it has been suggested that glass spheres be laid in a paint when the latter is in a semi-dry or tacky condition. This procedure has not always proven satisfactory for in some cases the spheres sink down to the base on which the paint has been applied and when this condition occurs, the marker will not act as desired for no reflecting medium will be about the lower portions of the spheres which

is absolutely essential for autocollimation.

"It has further been suggested that center lines and lane lines on roadways which are subjected to vehicular traffic be fabricated of paint incorporating minute glass spheres but such lines have been relatively short-lived for the spheres soon become disengaged from the paint and the corresponding autocollimating effect which the spheres attribute to the lines is lost. The presence of autocollimating units such as glass spheres in a lane line protects the paint or reflecting binder from wear due to vehicular traffic and as long as the spheres are held to the paint or binder, the marker shows little wear but as soon as the spheres become dislodged, wear of the marker is accelerated.

"It is an object of the instant invention to provide a combination marker including a reflecting binder and autocollimating units wherein the binder is of such peculiar and critical nature as to tenaciously hold the autocollimating units in a desired relation to give proper autocollimating effect for a relatively long period of time.

"It is a further object of the instant invention to provide a combination marker including a reflecting binder and a series of autocollimating units wherein the proportions of some of the ingredients of the binder are such as to impart a special characteristic thereto involving the tenacious holding of the autocollimating units to the marker.

"It is a still further object of the invention to provide a combination marker comprising a reflecting binder and autocollimating units wherein the film thickness of the binder in its wet condition bears a special relation to the size of the autocollimating units whereby when the marker is dried the desired effect will result.

\*    \*    \*    \*    \*    \*

"The marker may be fabricated by applying to the surface to be marked a reflecting binder which application may be made by spraying, brushing, dipping, or otherwise coating. While the marker is in a wet, semi-wet, or tacky condition the autocollimating units are distributed over the surface thereof either by hand or with a mechanical dispenser not shown. The reflecting binder is then permitted to dry and hold the autocollimating units in such relation thereto as to effect the reflecting of light back to the source emanating light thereto."

The Shuger patent has three claims, number 2 being the broadest and reading as follows: "A combined highway and lane line comprising a road surface, a reflecting binder thereon comprising pigment, non-volatile oil, and resin, and a series of autocollimating units partially embedded in said binder, the ratio by volume of pigment to pigment, non-volatile oil, and resin being less than 50 per cent."

The specifications of both the Heltzer and the Shuger patents describe in detail the two basic kinds of ingredients of the paint marker which provide the binder for the autocollimating units, that is, the glass beads: (1) the non-volatile ingredients, i. e., pigments, oil or resins; and (2) the volatile ingredients, i. e., thinning agents or solvents, such as mineral spirits, naphtha, benzol and alcohols; and the recommended proportions of these different ingredients. The specifications of both patents also define in detail the recommended quantities and sizes of the glass beads in relation to the wet film thickness of the binder, in order to provide road markers the efficiency of which will be long-lived, i. e., not requiring too frequent remarking because of wear.

It is to be noted that the Heltzer method of applying the road marker differs from that of Shuger, in that Heltzer premixes the glass beads with the paint and applies the mixture as a one-step process with the conventional mechanical equipment; whereas Shuger employs a two-step method; that is, with Shuger the paint mixture is first sprayed on the road, and then follows the dropping of the glass beads on this paint mixture while still wet or tacky, from another piece of equipment.

We give below in parallel columns the differences that exist in the two patents in (1) their respective products, (2) their manner of application, and (3) results obtained.

| Product Patented | Heltzer Patent | Shuger Patent |
|---|---|---|
| | Glass beads pre-mixed with the paint binder | Paint binder with glass beads partially embedded in it |
| Application to Street or Highway | One step | Two step |
| | Conventional equipment used, such as spray gun used in applying ordinary paint | Applicator machine to first spray paint binder on road, then drop beads on the paint binder |
| Location of Beads Prior to Application | Dispersed throughout paint | In container separate from paint |
| Location of Beads at Time of Application | Buried in paint film | Not entirely buried in paint film |
| Size of Beads | 3 to 10 mils average preferred | Distribution ranging from 5 to 30 mils specified as critical for attaining proper reflecting characteristics and durability |
| Wet Film Thickness | Greater than largest beads preferred | Thinner than largest beads specified as critical for attaining proper reflecting characteristics and durability |
| Results Obtained | | |
| Night Reflection at Time of Application to Road | Diffused reflection only | High reflex-reflection |
| Night Reflection After Initial Use | Reflex-reflection limited, but increases with use, due to increased exposure of beads | Reflect - reflection decreases with use due to wearing away and loss of beads |
| Peak of Reflex-Reflection Brilliance | Some months after application to road | At time of application |
| Effect of Highway or Weather Conditions at Time of Laying the Beaded Paint Stripe Provided Highway is Dry | None | Embedding and bonding of beads may be influenced by temperature, relative humidity, wind |
| Uniformity of Line | Good | Good |
| Durability and Economy Factors | Good. Necessary to renew line only once a year | Should be received twice a year |

The plaintiff claims that the Shuger patent is anticipated by the publication of E. F. Hickson, in April, 1937, of an article entitled "Some Properties and Tests of Traffic or Zone Tests". Plaintiff contends that Shuger is restricted under his patent to a two-step method of applying first the paint binder to the road surface and then dropping the glass beads upon it, whereas the Heltzer patent embraces a different, i. e., a one-step method of applying to the road surface a ready mixed paint with the glass beads as one of its ingredients. Plaintiff asserts that the essentials of the Heltzer product were unknown prior to his conception of them, namely, the ingredients of the binder in their specific proportions, including the specific size and quantity of the glass beads, all of which it is claimed result in greater durability and economy of the Heltzer product compared with the Shuger or any other similar product. Plaintiff claims that these advantages have been established not only by the fact that Heltzer has eleven licensees paying royalties for the use of his invention, but also by the fact that the present defendants and the intervener have been copying and selling the Heltzer composition since 1947, when it was first put on the market. It is this which plaintiff asserts constitutes infringement. Plaintiff relies upon the evidence introduced at the trial that defendants advertised the ready mixed product as a "trail blazer", having "revolutionary qualities" and "tremendous advantages" over plain paint, with a "durability unsurpassed even by the best" products that they had been selling for the past eight years; and that it could be "applied by conventional equipment like any ordinary paint", and thereby "eliminates the cost of extra equipment and the trick adjustment it requires", thus "costing less than all the others yet delivering durability unsurpassed even by the best of them".

As opposed to the aforegoing the defendants and the intervener contend that the Heltzer patent is invalid on four grounds: (1) for lack of invention; (2) because of public use of substantially Heltzer's pre-mixed product on public highways in Michigan by Larkin, Superintendent of the Michigan State Highway Department, in September, 1940, and again some time in 1941; (3) because of its public use in Illinois on May 22, 1942, on a public highway by Crawley, Traffic Engineer, Division of State Highways, Illinois; and (4) by one sale by plaintiff on October 20, 1944, of the Heltzer product.

The defendants' and the intervener's counterclaim of contributory infringement by Heltzer is directed to claim 2 of Shuger. It is based upon the theory that Heltzer infringes this claim as soon as there is a wearing down of the glass beads that have been applied according to Heltzer, because such wearing down results in the reflex-reflection which Shuger gets at the start of the application of his product to the highway.

Both the Examiner and the Board of Patent Appeals had held that Shuger's reference in his specifications to paint "incorporating" the glass beads anticipated Heltzer's concept of pre-mixing the glass beads with the paint before applying the paint to the roadway. But, on appeal, the United States Court of Customs and Patent Appeals held otherwise, which we believe to have been correct. Application of Heltzer, 189 F.2d 971, 38 C.C.P.A., Patents, 1124.

### Heltzer Patent
### Infringement

It is unnecessary to dwell upon the question of infringement of Heltzer by Shuger because, as stated at the beginning of this opinion, both the defendant and the intervener, Prismo Safety Corporation, to which the defendants have furnished their product, have admitted that this product, as furnished since 1947, has been substantially the same as that produced under the Heltzer patent. So, we turn immediately to the question of whether the Heltzer patent is valid.

### Heltzer Patent
### Validity

The plaintiff contends, in support of the Heltzer patent's validity, that it was

not anticipated by (1) public use, (2) sale, or (3) prior patent, and that it has definite criteria of invention in the following critical requirements, in addition to the fact that under it the glass beads are pre-mixed with the paint, instead of being dropped in after the paint is applied: (a) sizes of beads 3 to 10 mils in proportion of 3 to 8 pounds per gallon of binder; and (b) paint with pigment value ratio of from 25 to 45 per cent.

First, as to prior public use, we find there is a lack of adequate proof that Heltzer has been anticipated in this respect. Defendants rely upon the testimony of the witness Larkin, traffic sign superintendent of the Michigan State Highway Department. He testified that in September, 1940, he directed the use of marking paint in which glass beads had been pre-mixed on a section of a main interstate highway from Grand Rapids to Chicago, the marking being laid where four lanes converged into two, and that it was extended for a distance of three miles, the location being selected because of the need for special warning to motorists because of increased hazard. Witness Larkin further testified that this stretch of marking was regularly inspected, was satisfactory and remained until worn out. He also testified that in July in the following year (1941), he had the same type of marking laid down on another Michigan highway, which was likewise satisfactory and remained in use for a number of months until the lines became unserviceable and war conditions caused his Department to discontinue this type of marking. The composition used was six pounds per gallon of paint, pre-mixed, although Larkin did not state his pigment volume ratio, or the average diameter of the beads used.

■■ We are satisfied that the public use just referred to was more than experimental, and not abandoned within the meaning of the patent law. Larkin further testified that following the war, use of the same type of pre-mixed marking paint was resumed in the State of Michigan and is still used there, as well

as paint in connection with which the drop-in method of applying the beads is used. However, Larkin's testimony is not supported by any notebook entries, correspondence, or any other evidence, oral or written. In the absence of some credible corroboration of Larkin's testimony, either oral or in writing, we cannot treat this as sufficiently clear and satisfactory proof of anticipation under the patent law. See Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049, and cases therein cited.

■ Reliance is also placed by defendants upon the deposition of one Crawley, a traffic engineer for the State of Illinois. He testified that in May, 1942, he caused to be laid down on a public highway in that State some 335 feet of barrier line, that is, a line running along the side of the center highway line. Although Crawley's deposition is supported by his own notebook, showing composition of the marking paint, size of beads and their volume ratio to the paint binder, these notes indicate that this was clearly an experimental, or test application. Less than one gallon of paint was used because about one-half of the beads settled in the tank. Since, therefore, this use was essentially experimental, and was uncompleted and abandoned it is not to be treated as an anticipation of Heltzer. Elizabeth v. Pavement Co., 97 U.S. 126, 24 L.Ed. 1000.

■ Second, we also find a lack of adequate proof in the testimony of anticipation of Heltzer by sale of any equivalent product. We therefore now turn to a consideration, first, whether the Shuger patent is valid; and, second, if so, whether it anticipates Heltzer.

### Shuger Patent
### Validity

We agree with Dr. Walter A. Patrick, Professor of Chemistry at Johns Hopkins University, the inter-partes neutral expert witness, that Shuger was the first to disclose the conditions needed for a satisfactory binder for glass beads by giving a correct formula for the three

necessary functions of such a binder, namely, (1) binding the paint to the road; (2) binding the pigments together; and (3) binding other added matter, such as glass beads. None of the related patents prior to Shuger had disclosed such a formula. The patent to Gill, No. 1,902,440, issued on March 21, 1933, on application filed January 15, 1932, came nearest to doing this. However, it related to signs provided with a reflecting surface, one of their uses, among others, being along the roadway where ordinarily the light reaches the sign at an angle, and where it is highly desirable that the light be reflected back to the vehicle. Glass beads were employed by Gill, but there is no indication that he had conceived or suggested a formula for lines with reflecting characteristics laid on a roadway. See Refractolite Corporation v. Prismo Holding Corporation, 2 Cir., 117 F.2d 806. Korff, a little later than Gill, by a patent, No. 2,043,414, applied for on July 20, 1934, and issued June 9, 1936, did disclose a marker for highways containing glass beads or particles. However, Korff was very indefinite with respect to any disclosure as to bead size. In other words, Shuger was the first to obtain a result which combined all four of the optimum qualities of a paint line, namely, (1) durability, (2) daylight visibility, (3) immediate night visibility, and (4) additional deferred visibility. His idea was predicated upon the relation of the area of pigment to that of the beads, and that such areas should be determined by volume rather than by weight.

For these reasons, we conclude there was sufficient novelty over the prior art in what Shuger disclosed to justify the Patent Office granting him a patent therefor,—at least as respects claim 1 of Shuger, because it embraces specific limitations in size of the glass beads to be used, and also the relation of the beads to the wet film thickness. However, as to claims 2 and 3 of Shuger, since they call for nothing but dropping beads on a specified type of paint, we believe they are invalid for lack of any new disclosure over what was already well known in the art. See the publication by E. F. Hickson, in April, 1937, under the auspices of the National Paint, Varnish & Lacquer Association, Inc., of an article entitled "Some Properties and Tests of Traffic or Zone Paint", in which, in speaking of the characteristics of traffic paint, the author stated (page 158): "A certain amount of silicate-base pigment such as china clay, magnesium silicate, silica, sand, pumice, etc., is added to increase resistance to wear, the last two mentioned materials being added also to increase visibility at night by imparting roughness to the film. *Extremely small glass spheres distributed on the wet paint coat are also used for the same purpose.*" (Emphasis supplied.)

Having thus found claim 1 of Shuger to be valid, we come to the question whether this claim anticipates both or either of the two claims of Heltzer. Shorn of technical language, what Heltzer did was to describe a reflex light-reflective traffic marker that was more easily applied and more economical, that is, more durable, because it required less frequent renewal than Shuger or anyone else was shown to have yet disclosed. But in accomplishing this, Heltzer delays the optimum of usefulness of his marking until a considerable period of time, even as much as several months, after application of his product to the road. At the time of application he obtains only diffused night reflection, and not until considerable use does he obtain reflex-reflection, increasing with use. This is due, as shown in the comparative analysis given in the earlier part of this opinion, to the fact that Heltzer uses the pre-mix or one-step method, as opposed to the drop-in, or two-step method of Shuger in applying the beads to the paint. For this reason, under the Heltzer method, before putting down the line the beads are dispersed throughout the paint binder and are buried in the paint film; whereas under the Shuger drop-in method the beads are not so buried, with the result that Shug-

er obtains immediately a high degree of reflex-reflection, but this decreases, instead of increasing, as with Heltzer, with use, due to wearing away and loss of the beads. Because with Heltzer the beads are buried more completely in the paint film at the time of its application to the road, Heltzer recommends the use of smaller beads than does Shuger (as shown on the comparative analysis hereinbefore given). Since the beads last longer under the Heltzer method, the optimum exposure and reflex-reflection being postponed, this results, therefore, in greater economy as respects renewal of the line. Generally speaking, the Heltzer marking requires renewal about once a year, while the Shuger marking requires renewal twice a year.

It will thus be seen that on behalf of plaintiff it is contended that the novelty, —the invention—that lies in Heltzer, is not merely in his use of the pre-mix, as opposed to the drop-in method as respects the beads, but in a different formula, both as respects the size of the beads, and the extent to which they are embodied in the binder because pre-mixed instead of being dropped on, or into, the binder after the latter is laid down. Dr. Patrick, the inter-partes neutral expert witness, testified that he saw no novelty, from the viewpoint of one skilled in the art, in substituting the pre-mix for the drop-in method as respects the beads, since that had been done with other things, like sand and pumice. He did, however, admit that the pre-mix method was an improvement over Shuger, but not a novelty. He further testified that the only reason he could give for Shuger not having suggested, somewhere in his specifications, the pre-mix method was that he had in mind immediate night-time visibility, which could not be met by completely incorporating the beads in the paint before laying the line. Dr. Patrick admitted that he did not find in any prior art a disclosure of the subject matter claimed by Heltzer, that is to say, in pre-beaded paint, the relationship of bead size, quantity of beads, and pigment volume ratio, but based his conclusion upon what he called the area of conflict when reduced to the common denominator of paint as it existed on the highway.

For these reasons, Dr. Patrick stated that, from the point of view of one skilled in the art, he disagreed with the holding which we have heretofore referred to in this opinion, by the United States Court of Customs and Patent Appeals, that Shuger's reference in his specifications to paint "incorporating" the glass beads, did not anticipate Heltzer's concept of pre-mixing the beads with the paint before applying the paint to the roadway. Dr. Patrick did assert that the result of traffic wear,—abrasion—of the beads in the Heltzer line, would be to produce what claim 2 of the Shuger patent covers. However, he emphasized his conclusion,—again, of course, only from the point of view of one skilled in the art,—that he did not think it was correct to say that it was something new, even though Shuger did not do it or suggest it in his specifications, to put the beads in the paint by pre-mixing, as opposed to a separate drop-in method. Dr. Patrick also noted, which is not without some significance, that in his opinion Heltzer would never get immediate night-time visibility, no matter what size beads he used, and that he assumed that Heltzer did not use larger beads, not so much because he was willing to forego obtaining immediate night-time visibility for the purpose of increased economy, as because he was seeking to avoid the spraying apparatus becoming clogged if larger beads were used.

■ After carefully weighing all of the foregoing testimony of Dr. Patrick, which has been of much value in properly analyzing the seemingly simple and yet very refined, and therefore somewhat perplexing problems involved in the present suit; and also after full analysis of the testimony presented by the witnesses for both sides, we reach the conclusion that Heltzer is not anticipated by Shuger, and that, as the Patent Office found, there is sufficient novelty in the entire Heltzer formula, including and not

solely because it embraces, the pre-mix instead of the drop-in method with respect to the beads, to entitle Heltzer to a patent on both of his claims as an improvement over Shuger not embraced in his claim 1. We believe that Heltzer meets the statutory requirements for patentability. 35 U.S.C.A. § 103. See also McKee v. Graton & Knight Co., 4 Cir., 87 F.2d 262.

It is to be noted that the Court of Customs and Patent Appeals in its opinion in the application of Heltzer, supra, actually decided no more than that Shuger's use of the word "incorporating" in his specifications connotes incorporating glass beads on or into paint *after* the paint has been spread on the highway, quite as readily as it connotes incorporating it *before* the paint is spread, but that considering the state of the art at the time the Shuger application was filed in connection with the Shuger specifications, Shuger more probably had the former in mind, and that in any event, the use of the word "incorporating" as was done by Shuger was insufficient to support a finding that an anticipation of the pre-mixing of the beads by Heltzer was found in Shuger. The Court of Customs and Patent Appeals confined its ruling to this single question, although the ratio decidendi in the Court's opinion must have had much weight in the ultimate conclusion of the Patent Office in finding invention in Heltzer. But, as we have already pointed out, we do not base our own conclusion that the Heltzer patent is valid solely on the distinction between the pre-mix and the drop-in application of the beads.

█ Under the Patent Law, § 1, 35 U.S.C.A. § 282, a patent is presumed to be valid, and the burden of establishing invalidity rests on the party asserting it. Defendants have not overcome this presumption. Indeed the conduct of the defendants lends much support to this conclusion. It was not until the plaintiff had put the Heltzer patent product on the market that the defendants discontinued selling paint with beads to be dropped on, not mixed initially with the paint, and as we have already pointed out, defendants duplicated plaintiff's product, and plaintiff's advertisements with respect to the "revolutionary" advantages of their premixed beads and paint.

█ The imitation by a defendant who denies invention of a thing patented is often very strong evidence of the validity of the patent. Ackermans v. General Motors Corporation, 4 Cir., 202 F.2d 642; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corporation, 4 Cir., 40 F.2d 910. The defendants foresaw that the Heltzer product would have pronounced commercial success, and have unlawfully cut into plaintiff's profits through departing from the Shuger patent and infringing the Heltzer patent.

### The Shuger Patent
### Infringement

█ Plaintiff is not charged in the present suit by defendants with direct infringement of the Shuger patent but with so-called contributory infringement of claim 2 of that patent, on two grounds: (1) that plaintiff has sold its pre-beaded paint with intent that it be applied to highways so as to result in Shuger's combination *after* the wear of traffic has exposed the beads; and (2) that in a postscript note to one of plaintiff's brochures, it is explained that beads can be dropped on the paint line to provide immediate reflex-reflection during the initial period of use, before the pre-beaded line develops reflex-reflection properties.

We do not believe that there is any real merit in either contention. If a purchaser of plaintiff's pre-beaded paint sprinkles beads along the surface of the paint after it is laid down on the roadway, it is rather fanciful to say that the formula or principle underlying the Heltzer product is thereby converted into the formula or principle of Shuger. Nothing more is done than to add an auxiliary use of beads to the Heltzer pre-beaded paint to provide a temporary expedient until desired exposure of the beads in the Heltzer type of paint occurs.

Furthermore, it is inherent in all of the three Shuger claims that a basic factor is a two-step procedure from the very beginning.

Lastly we turn to defendants' defense of laches. It is that plaintiff had full knowledge and information concerning the methods and products of defendants as early as 1947, but nevertheless did not assert any claim until 1953 against the defendants; that meanwhile, defendants had enlarged their business and that plaintiff's inaction for such a long period constituted laches estopping plaintiff now from asserting its claim of infringement of the Heltzer patent.

In view of what we have already stated, we deem it sufficient to say that we find no merit in this argument of the defendants.

Summarized, our conclusions are as follows: (1) both claims of the Heltzer patent are valid; (2) they have been infringed by the defendant's product since 1947; (3) the Heltzer patent does not infringe Shuger; (4) claim 1 of the Shuger patent is valid; and (5) claims 2 and 3 are invalid.

A decree will be signed in accordance with this opinion.