## SANDLIN et al. v. JOHNSON.
### No. 13052.

Circuit Court of Appeals, Eighth Circuit

Dec. 13, 1945.

Tyree G. Newbill, of Kansas City, Mo., and Reuben Singer, of Philadelphia, Pa. (W. Arnold Brannock, of Kansas City, Mo., on the brief), for appellants.

David A. Murphy, of Kansas City, Mo., (Roy E. Hamilton, John T. Harding, R. C.

Tucker, and John Murphy, all of Kansas City, Mo., on the brief), for appellee.

Before WOODROUGH, JOHNSEN, and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

The case is here on a second appeal. Under our previous opinion, 141 F.2d 660, we reversed a judgment for defendant because the trial court had adopted an erroneous theory and had failed properly to try the questions whether plaintiffs' improved poultry-picking device was at the time a trade secret and whether it had been revealed to defendant by way of confidential disclosure.

On a retrial, the court found that at the time plaintiffs exhibited their device to defendant they had already made a general disclosure of it commercially so that it was not a trade secret; that their demonstration of it to defendant was without any attending obligation of secrecy either express or implied; and that defendant's use of it thereafter [whatever might be plaintiffs' other legal rights against defendant] was not a breach of a confidential disclosure as contended by plaintiffs. See D.C., 57 F.Supp. 374, 376. The parties had limited the issue on the retrial to the questions of trade secret, confidential disclosure and breach, and on the basis of its findings the court therefore dismissed the complaint, and plaintiffs have appealed.

The controlling question here is whether the court's findings, on the evidence in the record, properly can be said to be clearly erroneous.

The device involved was an improvement of some parts in combination with a previous machine which plaintiffs had designed to remove feathers from poultry and on which they had made application for a patent. The improvements consisted in a deepening of the cuts or slashes in the solid rubber fingers by which the feather-pulling was done, and in the substitution of a clamp for a bolt with which the rubber fingers were fastened onto the revolving drum of the machine. No application had then been made for a patent on the improvements, but at the time the retrial was had plaintiffs had been granted patents on both the original machine and the improved combination.

Plaintiffs and defendant had entered into negotiations for the manufacture and sale of the improved machine by defendant on a royalty basis. They executed a preliminary memorandum in which plaintiffs agreed to give defendant "sixty days to work out the necessary details and get into production on this machine provided you notify [us] definitely within fifteen days that you have made satisfactory progress to guarantee [us] that you will actually produce and sell this machine on a royalty basis." The memorandum further made provision for the drawing up of a formal contract within 60 days "that will completely cover all points each of us will desire" and that was to give defendant the exclusive right to manufacture and sell the machine in all except four reserved states, for "a maximum of 10% royalty based on the net sales of picking machines."

Within the 15 days required by the preliminary memorandum, defendant submitted to plaintiffs a report of his progress in arranging for the manufacture and sale of the machine. Plaintiffs meanwhile, without further consultation with defendant, had had their attorney prepare a formal contract, which they transmitted to defendant for his signature but which they had left unsigned by themselves. Defendant suggested some changes and additions to the proposed contract, to which plaintiffs refused to agree. The proposed contract purported to reserve to plaintiffs one more state than was specified in the preliminary memorandum. It also provided for a royalty of 10 per cent on the "gross selling price" instead of a percentage on the net sale price as stated in the preliminary memorandum. After a fruitless exchange of correspondence, defendant signed the contract which plaintiffs had prepared, before the sixty-day period provided in the preliminary memorandum had expired, and returned it for execution by plaintiffs. Plaintiffs then refused to sign the contract. On the witness stand, one of the plaintiffs gave as the reason for their refusal that they had lost confidence in defendant.

Defendant had gone ahead during the sixty-day period, attempting to make arrangements for manufacturing and selling the machine, in accordance, so he claimed, with the original intention of the parties and with his obligation under the preliminary memorandum. He incurred substantial expenses in connection with his efforts, and he took sales orders during the sixty-day period which he contended he was legally obligated to fill. After plaintiffs refused to execute the formal contract, he

proceeded with the manufacturing and selling of the machine, thinking, so he said, that plaintiffs finally would sign the instrument. Sometime later he made some changes in the design and features of the machine and applied for a patent of his own, which was granted. The question as to the validity or invalidity of any of the patents that have been referred to is not before us.

Plaintiffs contended on the retrial that, prior to their dealings with defendant and for some time after, they had kept their improved machine a secret in their own business and had made no disclosure of it; that in allowing defendant to see the machine they expressly cautioned him that it was a secret and that no disclosure was to be made of it until after they had executed a formal contract with him, to which condition defendant agreed; that under the circumstances defendant had no right to disclose the machine in any manner during the sixty-day period covered by the preliminary memorandum; and that, when plaintiffs finally decided not to execute a formal contract with him, defendant was wholly and utterly without any right at all to disclose or use the machine, because of his obligation of secrecy.

Defendant on the other hand contended that at the time of his dealings with plaintiffs they had already made a public disclosure of the improved device by having openly demonstrated and marketed it to the general trade; that when he was in their plant they were engaged in making additional machines for commercial sales and endeavored to impress him with the existing demand for their machine by showing him an order for a number of machines which they had just received from Swift & Co.; that there was no mention or suggestion of any secrecy or confidence in their dealings or discussions with defendant, but on the contrary plaintiffs' expressed desire was for an immediate expansion of the market which they claimed was developing for their machine; that defendant's viewing of the structure and operation of the machine was not on any confidential plane, either express or implied, because such a viewing had been for some time and was then readily available to any one who was sufficiently interested to visit plaintiffs' plant, and it was also such a viewing as could have been obtained from visiting the business establishment of any of the pre-

vious purchasers of one of the machines; that under the circumstances no confidential disclosure, either express or implied, could legitimately be contended to exist; that manifestly the only protection on which plaintiffs were intending to rely, both in their dealings with the public and with defendant was the monopoly position which they might acquire through the granting of patent rights; and that, whatever other enforceable claim plaintiffs might have against defendant, if any, for manufacturing and selling the device, there clearly was and could be no cause of action on the theory of a trade secret, confidential disclosure and breach, which were the only questions involved in the retrial.

█ We must hold that the evidence sufficiently supports the trial court's view that the improved machine was not a trade secret at the time of the dealings between plaintiffs and defendant, and we accordingly have no right to disturb this finding. There are a number of circumstances in the record which the trial court had the right to accept as establishing that demonstrations and sales of plaintiffs' machine had for some time previously been freely and openly made to the general trade, and were then also readily available, and that the machine therefore had not been kept a trade secret as plaintiffs attempted to assert. Among these was a letter written by plaintiffs to Wilson & Co., of Chicago, as a prospective purchaser, some weeks before the dealings between plaintiffs and defendant, which contained a list of "present users" of the machine, declared that "all machines have been sold on a demonstration," and further stated that "we would be more than glad to give a complete demonstration." Also, there was the order which plaintiffs had shown defendant from Swift & Co., of Chicago, for several machines, which had been received while defendant was in plaintiffs' plant and which they advised him they were filling. Plaintiffs argue in their brief that none of the machines which they had sold, as referred to in their letter to Wilson & Co., had contained the improved finger and substituted clamp, as to which their claim of secrecy and confidence is made, but this contention is in direct conflict with the specific testimony of one of the plaintiffs that only five machines had been manufactured by them before they adopted the improved features and that all of these original machines had

been sold to a single purchaser, who was not one of the "present users" enumerated in the letter to Wilson & Co.

There are other circumstances which similarly lend support to the trial court's view that no element of secrecy was involved in plaintiffs' and defendant's dealings with each other. Thus the record shows that it was agreed that defendant was to exhibit one of the machines at a national poultry-men's convention, which was being held during the sixty-day period, and that this was done and a report made to plaintiffs. Also, it appears that during the sixty-day period plaintiffs wrote a letter to defendant urging that it was time there "should be * * * some results shown [by defendant] from the sales angle," a position that can hardly be reconciled with plaintiffs' contention here that defendant had no right to make any sales or other disclosures during that period. Again, during the sixty-day period plaintiffs answered an inquiry from a prospective purchaser by suggesting that the matter be taken up directly with defendant.

On all this evidence, it cannot be said that the trial court's finding that no trade secret was involved is clearly erroneous. The record warrants the view that the structure of the improvements and their machine-combination was readily revealed by an inspection, and in this situation the sales which plaintiffs had made generally to the trade, together with the demonstrations which they willingly afforded any inquirer about the machine, were entitled to be held to have constituted a public disclosure. "Matters which are completely disclosed by the goods which one markets cannot be his secret." Restatement, Torts, § 757, Comment b, Secrecy.

Of course, the disclosure of a matter, which has been kept a trade secret, to one seeking to effect licensing arrangements for its use, will ordinarily be regarded as being confidential by general implication. Cf. Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 922, 923. And even as to business information that is not technically of the nature of a trade secret, which has been obtained by unfair or improper means, there may be a liability for any damages occasioned by its use. Restatement, Torts,

§ 759. But these principles have no application here. Under the findings of the trial court, the device was not a trade secret and the information concerning it was readily available to the general public and to any immediate inquirer. No confidential disclosure was therefore involved, and there was no obtaining of business information by unfair or improper means. Cf. Restatement, Torts, § 759, Comment c.

Plaintiffs have suggested in their brief that our previous opinion was intended to hold that there had been a confidential disclosure of a trade secret and that the trial court should have accepted that view. Our opinion merely declared that the evidence in the record before us at that time would have supported such a finding, but we expressly added, 141 F.2d at page 661, that "The issue, however, is one wholly for the trial court's determination on the evidence on a retrial." The evidence on the issue has been considerably amplified on the retrial over that in the previous record, and, as we have indicated, it sufficiently supports the trial court's findings so that we have no right to disturb the judgment.

We have pointed out that on the retrial the parties expressly limited the issue to the questions of trade secret, confidential disclosure and breach. We have no occasion therefore to consider the general question whether defendant had the right with total legal impunity to manufacture and sell plaintiffs' machine, but only the specific question whether he could be held liable for doing so on the ground that he was disclosing a trade secret. Whether plaintiffs may or may not have an action for royalties on the sales made by defendant under the preliminary memorandum, or for damages and profits in unfair competition for the machines sold under plaintiffs' trade-name or brand after the expiration of the sixty-day period covered by the preliminary memorandum, or for infringement subsequent to the granting of plaintiffs' patents, we are not called upon to determine and intend no intimation. The same is true as to the rights, if any, which defendant may have by reason of plaintiffs' refusal to execute the formal contract.

Affirmed.