## ACKERMANS v. GENERAL MOTORS CORP. et al.

### No. 6526.

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1953.

Decided March 6, 1953.

William D. Hall, Washington, D. C. (Richard S. Wright, Baltimore, Md., and Nelson Moore, Washington, D. C., on brief), for appellant.

Arthur Raisch, Detroit, Mich. (R. Dorsey Watkins, Baltimore, Md., William S. Pettigrew and A. F. Baillio, Detroit, Mich., on brief), for appellees.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and HAYES, District Judge.

PARKER, Chief Judge.

This is an appeal in a patent infringement suit in which damages were asked, not only for the infringement of the pat-

ent, but also for the use by defendant of the device of the patent in violation of the trust and confidence involved in a confidential disclosure while application for the patent was pending. The patent involved is Patent No. 2,549,153 relating to automatic tops for convertible automobiles. From judgment for defendant, the plaintiff has appealed.

There was nothing new in the use of automatic tops for convertible cars. Such tops consist of canvas stretched over collapsible bows or pillars operated by a small motor which can be started by the pressure of a button. The difficulty in using such tops, prior to plaintiff's invention, arose in connection with the canvas between the point where it was attached towards the rear of the car and where it was attached to the front of the folding pillar. If this portion of the canvas was allowed to hang loose inside the car, rain water could enter and at high speeds an unpleasant noise was created by the flapping of the loose canvas. Manufacturers had attempted to meet the difficulty by providing for this portion of the canvas to be fastened outside the car; but this necessitated one's getting out of the car to attend to the fastening when the top was raised, and the inevitable shrinking of the canvas, and the stretching where it was being held under tension by the fasteners, marred it appearance.

Plaintiff had had wide experience in building automobile tops in this country and in Europe. He had worked for leading manufacturers including Packard, Hudson and the defendant General Motors. He became interested in the problem presented by the convertible automobile top and worked out a device which solved it. Briefly stated, his invention consisted in a rubber cushion, attached to the fabric of the canvas top where it came in contact with the belt line, or top portion, of the body and fastened at the rear to the belt line and at the front to the folding pillar beneath the belt line so that the forward pull of the folding pillar would draw the cushion under tension against the belt line and thus seal it against the weather. To take care of any water that might drip through, notwithstanding the seal created by the cushion held under tension against the belt line, he provided a trough beneath the cushion with a spout to carry the water outside. The invention is aptly described in claims seven and twelve of the patent, which are as follows:

"7. In a vehicle body having a side structure terminating in a belt line; a folding top comprising flexible top material having the rear portion of its lower edge secured to the body adjacent the belt line and having the forward portion of said lower edge forming a prolongation of said material extending downwardly within the body below the belt line, a lateral cushion carried by said prolongation, a folding pillar hinged to said body and secured to said top material to exert forward pull thereon and press said cushion against an inner upper part of said side structure when the top is in the up position.

"12. A vehicle body having an inner side wall terminating in a belt line and a folding top comprising flexible top material having its lower rear edge secured to a portion of said body adjacent said belt line and having forwardly of said portion a prolongation of said material extending downwardly within said body, a folding pillar hinged to said body, said material being secured to said pillar, and a cushion associated with said prolongation and inner wall when said top is in raised position and forming a separable weatherproof juncture adjacent said belt line permitting said top being put in lowered position, said downwardly extending prolongation remaining within said body in the raised and lowered positions of said top and thus leaving said belt line exposed as viewed from outside said body, the force exerted by the forward pivoting of said pillar being used to close said juncture when said top is in raised position, and a trough within said body to receive leakage of said juncture."

While the application for the patent was pending in the patent office, plaintiff ap-

proached leading automobile manufacturers, including defendant, and disclosed his invention to them with a view of selling it to them or licensing its use by them if they were interested in it. The official of defendant to whom disclosure was made expressed interest, told plaintiff that he "had something" and requested plaintiff to leave with him a copy of the application for patent, which plaintiff did. Within a short while plaintiff was advised by defendant that his idea was not feasible, but sometime later two of defendant's employees, Mackie and Duluk, applied for a patent, through defendant's patent counsel, covering an automatic top in which the sealing was accomplished by having the rubber strip or cushion attached to the body of the car and by having the canvas pressed against it by a pressure arm or lever operated by the forward action of the folding pillar. The problem presented and the novelty and utility of a device for sealing the rear quarter of the car was graphically stated by defendant's counsel in the application for the patent as follows:

"This invention relates to automatic sealing for a convertible top. Convertible tops are now fastened along the rear edge permanently to the body or tonneau. At the sides, just to the rear of the rear side window, the fabric has to be releasably fastened to the top of the body or tonneau by means of releasable fastening means. This fastening means may take the form of an inverted dovetail channel strip fastened to the top of the tonneau and extending longitudinally of the body. The foldable top has a stiff flap sewed on the inside. When the top is up this flap has to be tucked under the inverted channel. This has to be done by hand and is quite a chore as very often after the top has been in use for some time it is hard to stretch the top material and hook the flap under the channel. Another form of fastening the top material to the top of the tonneau at the rear quarter is to use a plurality of metal channel strips in which fasteners or studs on the inside of the top may be snapped in place, and the studs will slide out the ends of the channels when the top is folded down. This snapping the fasteners in the channels has to be done by hand after the top is raised. In both these arrangements the top material is automatically disengaged when the top is folded down. However both of these arrangements have the disadvantage that each time the top is raised the top material should be fastened in place at the sides when it has been released and this has to be done by hand. Furthermore the car can never be reliably locked because the top material may be easily pulled away from the top of the tonneau and the arm reached into the body to open the door."

This application was granted but there is no contention that defendants manufactured any tops in accordance therewith. Two other employees of defendant, Coppock and Compton, applied for another patent, however, which unquestionably embodies plaintiff's invention although it may constitute an improvement thereon; and this patent embodies the construction which defendant has adopted and which was corectly held by the court below to be an infringement of plaintiff's patent if that patent be held valid. It is significant that Coppock was director of the experimental and development section of the Fisher Bodies Division of defendant and that it is admitted that copy of the specifications and drawings of plaintiff's patent were submitted to and seen by him prior to his application. Defendant's construction consists in the use of the rubber cushion attached to the canvas top, fastened to the belt line of the body and held in tension against the belt line by the forward pull of the folding pillar. In defendant's construction, however, the rubber cushion is enclosed by the fabric, being sewed into a pocket in the fabric which presses against the belt line, and a pressure arm or lever is provided which is caused by the forward pull of the pillar to press the fabric enclosing the rubber cushion against the belt line. A trough is provided, as in plaintiff's patent, for catching the water that may seep through notwithstanding the seal.

■ The defendant certainly did not avoid infringement by enclosing the cushion in a pocket of the fabric instead of attaching it to the outside; for it was still the cushion held under tension by the forward pull of the pillar that effected the sealing. The lever pressing the cushion more tightly against the belt line of the car may constitute an improvement; but defendant's construction unquestionably used the substance of plaintiff's invention. It is most significant that the defendant's counsel in presenting their application for the Coppock and Compton patent in the patent office had the following to say about that patent:

"It is possible that the arm which presses the weatherstrip up against the abutment might move sideways instead of being a vertical swinging arm. *The broad invention in this application resides in the use of the weatherstrip on the fabric*, particularly a foam rubber weatherstrip that is sewed into a pocket in the folding top material." (Italics supplied.)

■ The learned District Judge, while holding that the patent, if valid, was infringed by defendant's construction, held that it was invalid, relying chiefly for that holding upon automatic tops used upon a single 1933 Cadillac Phaeton built for display and later operated by one Armstrong, a 1936 Cadillac Coupe built for and used by a son of the President of General Motors, a 1933 Dusenberg car and a Mercedes Benz car with a Mulliner top. None of these cars, however, had a top which embodied or suggested the essence of plaintiff's invention. None of them had the rubber cushion attached to the canvas and none of them had a cushion held in tension by the forward pull of the folding pillar in such way as to create a seal against the belt line of the car. The same may be said as to all of the patents upon which defendant relies. The facts that the construction of the early cars relied upon was not followed, and that not until plaintiff came forward with his cushion under tension was any serious attempt made to dispense with the buttoning or fastening of the canvas to the rear quarter of the

car, are circumstances which argue most forcefully as to the novelty and utility of what plaintiff had accomplished; and the fact that defendant, one of the largest manufacturers of motor cars, has found it necessary to embody in the construction which it has so recently adopted the heart of plaintiff's invention is strong proof of the validity of the patent, which was granted by the patent office after consideration of 27 prior patents as shown by the references cited. As said by Judge Hough speaking for the Court of Appeals of the Second Circuit in Kurtz v. Belle Hat Lining Co., 280 F. 277, 281 and quoted with approval by this court in Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 4 Cir., 40 F.2d 910, 914:

"The imitation of a thing patented by a defendant, who denies invention, has often been regarded, perhaps especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think."

■ It follows that the patent sued on must be held valid and infringed by defendant, and we think that plaintiff should be awarded damages, not merely from the time of issuance of the patent, but from the time that disclosure of the application therefor was made to defendant, under the principles laid down by this court in Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 922, 923, certiorari denied 298 U.S. 673, 56 S.Ct. 938, 80 L.Ed. 1395, where we said:

"The general rule, of course, is that the monopoly of a patent which entitles a patentee to damages for infringement commences only when the patent is granted; but where, in advance of the granting of a patent, an invention is disclosed to one who, in breach of the confidence thus reposed, manufactures and sells articles embodying the invention, such person should be held liable for the profits and damages resulting therefrom, not under the patent statutes, but upon the principle that equity will not permit one to unjustly enrich himself at the expense of another. * * * Com-

plainant offered to disclose his invention to defendant with a view of selling it to defendant, and so stated in his letter. Defendant was interested in the proposition and invited the disclosure, otherwise it would not have seen complainant's specification and drawings until the patent was granted. While there was no express agreement that defendant was to hold the information so disclosed as a confidential matter and to make no use of it unless it should purchase the invention, we think that in equity and good conscience such an agreement was implied; and having obtained the disclosure under such circumstances, defendant ought not to be heard to say that there was no obligation to respect the confidence thus reposed in it."

See also Chesapeake & O. R. Co. v. Kaltenbach, 4 Cir., 95 F.2d 801; Saco-Lowell Shops v. Reynolds, 4 Cir., 141 F. 2d 587; Booth v. Stutz Motor Co. of America, 7 Cir., 56 F.2d 962; Sandlin v. Johnson, 8 Cir., 152 F.2d 8, 10.

█ Defendant contends that it should not be held liable for damages for breach of the confidential disclosure, because it says that its construction was the result of independent effort on the part of its employees and was not derived from the disclosure made by plaintiff. There is evidence on the part of employees in support of this contention; but this evidence is not convincing in view of the fact that the employees testified that their efforts were along lines already initiated by defendant and of the fact that Coppock, who had seen plaintiff's drawings and specification and was one of the applicants for the patent on the device that the employees worked out, was in court and was not put on the stand by defendant. As we said in the Hoeltke case, supra, 80 F.2d at page 923:

"It is well settled that where an unpatented device, the existence and use of which are proven only by oral testimony, is set up as a complete anticipation of a patent, the proof sustaining it must be clear, satisfactory, and be-yond a reasonable doubt. The Barbed Wire Patent [Washburn & Moen Mfg. Co. v. Norwood], 143 U.S. 275, 284, 12 S.Ct. 450, 36 L.Ed. 154; Adamson v. Gilliland, 242 U.S. 350, 37 S.Ct. 169, 61 L.Ed. 356. And we think the same rule should be applied against one who admittedly receives a disclosure from an inventor, proceeds thereafter to manufacture articles of similar character, and, when called to account, makes answer that he was using his own ideas and not the ideas imparted to him."

And when the case was before us on rehearing we said, 80 F.2d 928:

"One who invites the disclosure of an invention, and thereafter begins to manufacture articles embodying the principle of the disclosure, labors under a heavy burden when he seeks to justify his action on the ground of independent invention, and he ought to offer something of greater weight than the verbal testimony of interested witnesses."

█ We do not think, however, that plaintiff is entitled to have the Coppock and Compton patent assigned to him as prayed. If that patent has any validity as an improvement over the device of plaintiff, a question upon which we express no opinion, the improvement was not the invention of plaintiff but of Coppock and Compton, and defendant, as assignee of those patentees, is entitled to the benefit thereof, even though defendant may not, in practicing the patent, use the basic device of plaintiff without being guilty of infringement. The case presented is the typical one of an improvement on a patented device, where the original patentee may not use the improvement without the consent of the owner of the improvement patent and where the latter may not use the device upon which he has made the improvement without the consent of the original patentee. Smith v. Nichols, 21 Wall. 112, 118, 22 L.Ed. 566; Cochrane v. Deener, 94 U.S. 780, 787, 24 L.Ed. 139; Cantrell v. Wallick, 117 U.S. 689, 694, 6 S.Ct. 970, 973, 29 L.Ed. 1017; Wine Ry. Appliance Co. v. Baltimore & O. R. Co., 4 Cir., 78 F.2d

312, 316; Federal Yeast Corporation v. Fleischmann Co., 4 Cir., 13 F.2d 570, 571; 69 C.J.S., Patents, § 295, p. 865.

The judgment appealed from will be reversed and the case will be remanded for further proceedings in accordance with the principles herein laid down.

Reversed and remanded.