**TOM LOCKERBIE, INC., Plaintiff,**

**v.**

**Frederick FRUHLING, John Frederic Dunckel, and Continental Equipment Corp., Defendants.**

No. 58–C–287.

United States District Court
E. D. Wisconsin.

Aug. 28, 1962.

See also 195 F.Supp. 274.

Frank S. Andrus and Elwin A. Andrus, Milwaukee, Wis., for plaintiff, John P. Murphy, Washington, D. C., of counsel.

James E. Nilles of Lieber, Lieber & Nilles, Milwaukee, Wis., for defendants,

Suel O. Arnold, Milwaukee, Wis., of counsel.

GRUBB, District Judge.

This is an action for misappropriation of a trade secret and for infringement of U. S. Letters Patent No. 2,854,827, hereinafter referred to as the "Lockerbie" patent. The patent and trade secret in suit relate to an apparatus for cooling water to be circulated through a tank to an external heat exchanger, also known as an air agitated ice builder, commonly used in the dairy industry. Prior to trial the issue of damages was severed and reserved for consideration after judgment on the merits.

The court has jurisdiction of the parties and of the subject matter of this action under the patent laws of the United States.

Plaintiff, Tom Lockerbie, Inc., hereinafter referred to as "Lockerbie," is a New York corporation having its principal place of business in the City of Utica. It is the owner by assignment of the patent in issue. Defendant, Frederick Fruhling, a citizen of the State of Wisconsin, is the president and a majority stockholder of the corporate defendant, Continental Equipment Corp., a Wisconsin corporation having its principal place of business in the City of Milwaukee, hereinafter referred to as "Continental." Defendant, John Frederic Dunckel, is a citizen of Wisconsin. He is a former employee of Lockerbie, a co-inventor of the patent in suit, and is presently employed as sales manager and purchasing agent of Continental.

The air agitated ice builder defined in the claim of the Lockerbie patent * consists of an insulated tank containing water, wherein a refrigerant coil is disposed in vertical banks of parallel loops. Ice forms and is stored on the vertical banks of the refrigerant coil. Water leaves the tank through an outlet pipe at a temperature of 32° to 34° F. It returns to the tank from the external heat exchanger at a warmer temperature of about 38° to 40° F., entering the tank through an inlet pipe.

Ice located near the warm water inlet melts more rapidly than that situated near the outlet in contact with already cooled water. Agitation of the circulating water prevents solid ice formations near the exit pipe and promotes the uniform melting of the ice banks throughout the tank which furthers the cooling of the water.

Agitation of the circulating water is accomplished by the introduction of air within the tank. The air agitation means consist of a plurality of elongated air lines or nozzles with small holes drilled in their circumference and supplied with pressurized gas. The nozzles are located on the bottom of the tank between the parallel banks of refrigerant coil. Bubbles of air are forced out of the small holes at a controlled rate and rise between the banks of ice formed on the refrigerant coil. The air bubbles provide uniform agitation of the water adjacent to the ice banks and promote the even melting thereof.

The trade secret allegedly misappropriated by defendants is as set forth in the following statement:

"Air agitators throughout the tank induced from the bottom, com-

---

* The single claim of the Lockerbie patent reads as follows:

"In a cooling system, an insulated tank having a lower inlet opening and upper outlet opening respectively through which circulating water enters the tank at a higher temperature than which it leaves the tank, a cooling coil uniformly disposed in said tank comprising a plurality of parallel loops disposed in parallel vertical planes, means connected to said coil for circulating a coolant therethrough for forming ice banks uniformly on said loops, and water agitating means in said tank for uniformly agitating the water as it is circulated in contact with ice formed on said loops to promote even melting of ice thereon, said agitating means comprising a plurality of uniformly disposed elongated nozzles at the bottom of the tank interposed between the parallel planes of the loops of said coil, and a source of pressurized gas operatively connected to said nozzles for percolating bubbles of pressurized gas uniformly past the coil loops as water is circulated through said tank."

bined with an arrangement of a plurality of spaced vertically arranged coils, between which the air agitation functions."

Defendant Dunckel was employed by Lockerbie in 1952 as a dairy equipment salesman. He was made secretary of the company in 1953 and vice president in 1956. Late in 1952, Dunckel, Thomas E. Lockerbie, who is plaintiff's president, and DeForrest G. Perryman developed and completed a working model of an air agitated ice builder of the type of apparatus defined by the patent in suit. Patent application Serial No. 395,-184 in respect to this apparatus was filed on November 30, 1953. Dunckel assigned his interest therein to Thomas E. Lockerbie who later assigned the same to plaintiff. This application matured into the patent in suit which was issued on October 7, 1958.

During the course of his employment with Lockerbie, Dunckel's major experience was with the production and sale of the Lockerbie air agitated ice builder constructed in accordance with the specifications of the Lockerbie patent. Dunckel also made or supervised the making of all engineering drawings for this machine.

Dunckel and Fruhling had been acquainted since 1937 and, during the course of years, met occasionally at dairy shows. In May of 1957, while Dunckel was on a business trip for Lockerbie, he visited Fruhling at the Continental plant in Milwaukee.

In June 1957, Fruhling saw Dunckel at the Lockerbie plant in Utica, New York, and offered him a position with Continental which Dunckel accepted. Dunckel began his work at Continental on July 15, 1957, as sales manager and purchasing agent at a better salary than he had been receiving at Lockerbie.

At this time 90 per cent of Continental's dollar volume of business was concerned with bottle washers, 10 per cent with tanks, and a very small fraction with conveyors and conveyor chains. About one week after Dunckel began working at Continental, discussions were had regarding the feasibility of manufacturing air agitated ice builders in which Dunckel, Fruhling, and William Marx, Continental's chief engineer, participated. The decision to produce this machine was reached, principally by Fruhling, and the first drawings and preparations for production of the accused machines, the Continental air agitated ice builders, were undertaken in early August of 1957.

Marx and Dunckel collaborated on the design of the Continental machines. Dunckel made most of the drawings. In purchasing parts for the machines, Dunckel made some attempt to keep knowledge of Continental's new enterprise from Lockerbie.

The first Continental machine was completed and shipped to a customer in March 1958, and ten more machines were completed and sold by Continental prior to the date of issuance of the Lockerbie patent on October 7, 1958. Since issuance of the patent, ninety-five more Continental machines were produced and sold to date of trial.

Lockerbie claims infringement by all Continental machines manufactured and sold by defendants as well as misappropriation of its trade secret. Defendants deny the validity of the Lockerbie patent and further deny infringement and misappropriation. Defendant Fruhling asserts nonliability as to all claims, and defendant Dunckel claims nonliability as to any infringement. Lockerbie has raised an issue as to estoppel of the defendants to deny validity of the patent in suit.

## VALIDITY AND ESTOPPEL

■■ The assignor of a patent and his privies are estopped to deny validity of the assigned patent as against the assignee. The state of the art may, however, be resorted to in order to limit the scope of the claims of the assigned patent on the question of infringement. Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316

(1924). If it is shown that there is substantial identity of the assigned patent, the accused device, and of prior art in the public domain, the principle of estoppel to deny validity must yield to the public interest in the free enjoyment of public domain art. Scott Paper Co. v. Marcalus Manufacturing Co., Inc., 326 U.S. 249, 257, 66 S.Ct. 101, 90 L.Ed. 47 (1945); National Welding Equipment Co. v. Hammon Precision Equipment Co., 165 F.Supp. 788, 792 (N.D.Cal. 1958).

■ Considering all the evidence of record, and for reasons set forth with greater particularity hereafter, the court determines that defendants are not barred from denying validity of the Lockerbie patent because there is substantial identity between the disclosure of the single claim of the patent in suit, the accused machine, and a prior expired patent and other public domain art.

■■ Defendants challenge the validity of the Lockerbie patent on the grounds of anticipation, obviousness of the subject matter, failure of the claim allowed to show patentable differences over rejected claims, and lack of specificity of the subject matter. They cite as prior art Borgerd Patent No. 2,077,-871, issued April 20, 1937; the McCormick-Deering milk cooler, a machine manufactured by International Harvester Company, as shown in the instruction book for installation and operation published in 1937, which machine follows the Borgerd patent; a modified McCormick-Deering milk cooler purportedly used in Green Bay, Wisconsin, in 1936 or 1937; and a commercial water cooling machine manufactured by the Vilter Manufacturing Company of Milwaukee, Wisconsin, as shown by a drawing dated January 20, 1951.

The Borgerd patent and McCormick-Deering machine relate to a milk refrigerating cabinet employing an air agitation feature. This structure consists of an insulated tank containing water. A refrigerant coil containing a coolant is located inside and along the four walls of the tank in vertical banks of parallel planes. The air agitation means consist of a continuous perforated pipe in rectangular disposition at the bottom of the tank, located inwardly the banks of refrigerant coils in such proximity as to agitate the water adjacent to the coils on which ice banks are formed and stored. Objects of the Borgerd invention are the provision of means for rapidly transferring heat from containers of milk which are placed in the central portion of the tank to the ice banks and for air agitation of the water. The Borgerd patent also shows optional use of a baffle—not shown in the McCormick-Deering machine—for directing the stream of air bubbles to the walls of the ice banks.

The Vilter water cooling machine consists of an insulated tank through which water is circulated to an external heat exchanger. A refrigerant coil containing a coolant is disposed throughout the tank in vertical planes of parallel loops, and banks of ice form thereon. Agitation of the circulating water within the tank is performed by mechanical means and not by air agitation. Another apparatus, the CP compact ice builder, manufactured by The Creamery Package Mfg. Company of Chicago, Illinois, as shown by a manual entitled "Directions For Installing and Operating The CP Compact Ice Builder" (containing drawings dated 1947), is substantially similar to the Vilter machine. It also utilizes mechanical agitation of the water.

The court finds that the essence of the claimed invention of the Lockerbie patent consisting of the means, object, and function of the air agitation feature is substantially similar to the disclosure of the Borgerd patent and the structure of the McCormick-Deering machine. In each instance there is a refrigerant coil submerged in water in the shape of vertical banks of parallel planes of coil on which vertical banks of ice are formed. The object of air agitation is the uniform melting of the ice to promote the cooling of the water. This is accomplished by air bubbles escaping from air lines located below the site where the

ice banks form and in such proximity thereto that the bubbles of air will agitate the water adjacent the ice banks.

The differences between Lockerbie and Borgerd are not material to the air agitation principle which functions by basically similar means to accomplish similar objectives in these structures. Adaptation of the air agitation principle of Borgerd to a tank showing the disposition of the refrigerant coil, as in Lockerbie, does not constitute invention. The additional problem posed in Lockerbie by the uneven ice formation at various locations in the tank which results from the differences in temperature of the circulating water does not bring the application of the principle of air agitation under these circumstances within the area of novelty over the prior art. The baffle shown in Borgerd does not serve to channel or agitate the water but to direct the stream of air bubbles. It is not essential to the operation of the air agitation principle.

The evidence as to a McCormick-Deering milk cooler, modified to permit circulation of the cooled water to an external heat exchanger, purportedly in use in Green Bay, Wisconsin, in 1936 or 1937, does not establish this device as an instance of anticipatory prior art. The witness who testified to having seen the machine may not be characterized as disinterested since he is the chief engineer of a company presently manufacturing an air agitated ice builder essentially similar to the Lockerbie machine and to the accused device. The recollection of the witness was vague as to the number of these modified structures and as to the time of use. There is no documentary or other corroborating evidence of this structure. Although the testimony was not contradicted, it lacks definiteness necessary to establish prior use. Cf. Borkland v. Pedersen, 244 F. 2d 501, 503 (7th Cir.1957).

If the principal differences between the Lockerbie disclosure and that of the Borgerd patent—the disposition of the refrigerant coil and air agitation means within the tank and the circulation of the water to an external heat exchanger—were deemed sufficient to distinguish Borgerd as anticipatory art, the Lockerbie claim would nevertheless lack patentability because of obviousness of the subject matter. The Vilter and Creamery Package water coolers show structures substantially similar to that of Lockerbie in respect to the tank, placement of the refrigerant coil therein, and the circulating water. Adding the air agitation means of Borgerd situated in proximity to the banks of refrigerant coil as in the Vilter or Creamery Package machines to permit the air bubbles to agitate the water adjacent the ice formed on these banks of coil and eliminating the means of mechanical agitation does not constitute invention. In Lockerbie the old elements perform the identical function—air agitation of water to promote the uniform melting of ice formed on banks of refrigerant coil to aid the cooling of the water in the tank—by substantially similar means as in the prior art of Borgerd considered together with the Vilter apparatus. Combining the air agitation feature of Borgerd with the refrigerant coil structure of Vilter and adapting the air agitation means to accommodate the particularities of the Vilter coil structure and water circulation is within the competence of a person skilled in the art. This aggregation falls short of constituting patentable invention. Section 103, Title 35 U.S.C.A., and Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

Defendants' remaining objections to patentability essentially go to lack of invention or to obviousness, which questions have already been determined.

The presumption of validity ordinarily arising from issuance of the patent is clearly overcome in this case. Patentees' counsel distinguished the Borgerd reference before the patent office on the grounds that Borgerd showed the refrigerant coil arranged around the tank, that the ice banks were located at the ends of the cabinet, and that baffles were required for the rapid melting of the

ice, whereas in Lockerbie the refrigerant coil was placed transversely throughout the tank, and the need for baffles to effect the proper flow of water over the coils to promote the melting of the ice was eliminated.

Transverse placement of the coil throughout the entire tank, although indicated in the drawings of the Lockerbie patent, is not specified by the single claim which defines "a cooling coil uniformly disposed in said tank comprising a plurality of parallel loops disposed in parallel vertical planes." The Lockerbie claim language reads on Borgerd, on the Lockerbie structure, on the Vilter machine, and on the accused device. Assuming that the disposition of the refrigerant coil were a patentable distinction over Borgerd, the identical disposition is found in the Vilter apparatus which was not called to the attention of the patent office other than by reference to the mechanical agitation of the water employed in such devices. The pertinent art relevant to the refrigerant coil structure and water circulation was not before the examiner in this case.

Further, the emphasis on the baffle requirement in Borgerd was misleading. A reading of the Borgerd patent reveals that use of the baffle was optional in certain unspecified instances. The purpose of the baffle is the directing of the air stream and not the channeling or agitation of the water over the coils as in the mechanical agitation features of the earlier Vilter and Creamery Package machinery.

Additionally it may be noted that the distinction between Borgerd and Lockerbie made on the trial as to the circulation of the water to an external heat exchanger in Lockerbie apparently was not relied on by the patentees before the patent office.

The presumption of validity is weakened by the showing that the structure of Vilter and similar devices was not called to the attention of the patent office and that misleading emphasis was placed on the use of a baffle in the Borgerd reference before the patent office.

Hyster Company v. Hunt Foods, Inc., 263 F.2d 130, 133 (7th Cir.1959). This weakened presumption of validity is overcome by evidence of record before this court that this prior art anticipates or renders obvious the subject matter of the claimed invention.

The prior art references are in the public domain—the Borgerd patent by virtue of its expiration, the Vilter and Creamery Package machines by prior public use. Assuming the substantial identity of the Continental machines to the Lockerbie disclosure which is conceded by defendants for the purpose of determining the issue of estoppel to deny validity, it follows that there is substantial identity of means, function and objective of the accused device, the assigned patent, and the prior public domain art. Under these circumstances the assignor is not estopped to deny validity of the Lockerbie patent. Nonvalidity of the assigned patent for lack of invention and for obviousness of subject matter over the prior art has been established.

■ In the event the assignor Dunckel were estopped to deny validity of the Lockerbie patent, this estoppel would not be applicable against defendants Fruhling and Continental. Although Fruhling and Continental received the primary benefits derived from Dunckel's knowledge and experience as coinventor, producer, and seller of air agitated ice builders, the relationship between the parties does not establish the requisite privity for extending the estoppel to them. Fruhling and Continental are not the instrumentalities of Dunckel in carrying out the alleged infringement of plaintiff's patent claim. Dunckel is a mere employee of Continental. An annual bonus paid him by Continental is not the equivalent of an owner's share of the profits of Continental. Dunckel is no more than a valued employee in a responsible position. Under these circumstances, Dunckel, Fruhling, and Continental cannot be considered joint venturers in carrying out infringement or sharers of the profits derived therefrom.

Macey Co. v. Globe-Wernicke Co., 180 F. 401, 407 (7th Cir.1910); American Machinery Co., Inc. v. Everedy Mach. Co., 35 F.2d 526 (E.D.Pa.1929); and see the definition of "privity" stated in Douglass v. United States Appliance Corporation, 177 F.2d 98, 101 (9th Cir. 1949).

## INFRINGEMENT AND FILE WRAPPER ESTOPPEL

█ Defendants contend that in the event the Lockerbie patent were valid, there could be no infringement of its claim by the accused machines because eleven of the Continental machines were manufactured and sold prior to issuance of the patent in suit and because there is file wrapper estoppel to claim infringement as to the ninety-five post-patent issuance devices.

The claim of the Lockerbie patent reads on the eleven pre-patent issuance Continental machines. In these devices, as in Lockerbie, air agitation is performed by means of gaseous bubbles released from air lines located below and between vertical banks of refrigerant coil submerged in circulating water in an insulated tank, resulting in agitation of the water adjacent to the ice formed on the coil to promote the even melting thereof. The real identity of means, operation, and result would suffice to support a claim of infringement if the patent in suit were valid and the claim might otherwise be maintained. Scherbatskoy v. United States Steel Corporation, 287 F.2d 552, 558 (7th Cir.1961).

█ It is well settled that there can be no infringement of any patent claim prior to issuance of the patent. Lockerbie contends that the circumstances of this case bring it within an exception to this rule because the coinventor and assignor disclosed his knowledge of the invention and participated directly in the preparation and sale of the accused devices on behalf of defendant Continental prior to issuance of the patent. Dunckel's activities may be deemed in breach of an implied promise not to disclose the confidential subject matter of the patent application or to use his knowledge thereof contrary to the interests of the coinventors or of the assignee. A charge of infringement may be predicated on this conduct in respect to accused devices prior to issuance of the patent. Compare Ackermans v. General Motors Corp., 202 F.2d 642, 645 (4th Cir.1953), and Picard v. United Aircraft Corporation, 128 F.2d 632, 637 (2d Cir.1942), cert. denied 317 U.S. 651, 63 S.Ct. 46, 87 L.Ed. 524 (1942). These cases indicate that there may be liability for damages for infringement prior to issuance of a patent in case of a breach of an implied promise not to disclose the confidential information of the invention if the patent were held valid.

Continental machines manufactured after issuance of the Lockerbie patent differ in one respect from those produced prior to that date and from the specifications of Lockerbie. In these later Continental machines, the air nozzles are located directly below the banks of coil on which the ice is formed rather than between said banks. The change was made to achieve greater efficiency in operation and manufacturing economy and to avoid patent infringement.

The relocation of the air nozzles does not change the basic structure of the means, operation, or objective of the air agitation feature. An improvement of this nature falls within the doctrine of equivalents and does not ordinarily avoid a charge of infringement. Defendants contend, however, that Lockerbie is estopped to rely on the doctrine of equivalents because the patentees disclaimed a general location of the air nozzles as "disposed evenly at the bottom of the tank" in favor of the precise position specified as "between" the parallel planes of refrigerant coil.

The patent file reveals that the patentees withdrew the former claim because of the examiner's objections on the ground of certain prior art references, not cited to this court, and because the claim failed to clearly define the invention, since the relationship of the refrigerating coil to the rest of the struc-

ture had not been set forth definitely. The latter objection of indefiniteness was met in the allowed claim by specification of the disposition of the refrigerant coil. Additionally, the patentees defined a specific location of the air nozzles, presumably in response to the objection of indefiniteness of the structure.

█ The change in the Continental machines, made after issuance of the Lockerbie patent, consists of a minor structural improvement which does not affect the basic means, operation, or objective of the air agitation feature. An attempt to avoid infringement was one motive for incorporating this difference. Under these circumstances, if the patent were valid, and considering the patent claim in light of its file wrapper history, the patent owner would not be estopped from claiming infringement because of this minor variation. See Rohm & Haas Company v. The Permutit Company, 130 F.Supp. 260 (D.Del. 1954).

TRADE SECRET

█ The subject matter of the alleged trade secret which is substantially similar to the claimed invention of the Lockerbie patent was fully and publicly disclosed in Lockerbie's trade literature during the course of Dunckel's employment with plaintiff. Further, the court has determined that this subject matter was not novel or nonobvious to persons skilled in the art of air agitated ice builders. There can be no recovery for alleged misappropriation unless the claimed trade secret was in fact secret and confidential.

█ Plaintiff contends that Dunckel is chargeable with disloyalty to his former employer, Lockerbie. It has not been shown that Dunckel was under contractual or other obligation not to terminate his employment at will and not to use any skill and knowledge he possessed to participate in competition with plaintiff. Insofar as these competitive activities involved disclosure of the subject matter of the assigned patent application, this disclosure would be actionable, if at all, under the law of patents or contracts and not of unfair competition. Cf. Booth v. Stutz Motor Car Co. of America, Inc., 56 F.2d 962 (7th Cir. 1932), where the actionable confidential disclosure involved matters independent of invalid patent rights thereon.

LIABILITY

Defendant Dunckel claims nonliability as to any infringement because he was a mere employee of the corporate defendant Continental.

█ If the Lockerbie patent were valid, liability for infringment by post-patent issuance machines would be avoided because Dunckel did not have direction or control over the affairs of the corporate defendant and because he did not directly participate in any benefits derived from the alleged infringement.

With respect to infringement by pre-patent issuance devices, however, Dunckel's role in the manufacture and sale of said machines had another aspect than that of the employment relationship. Although holding the position of sales manager and purchasing agent, Dunckel personally participated in the discussions leading to Continental's manufacture of air agitated ice builders, prepared the drawings therefor and otherwise used his knowledge of the information of the patent application disclosure to aid Continental in getting a head start in placing these accused devices on the market. Under these circumstances, Dunckel's activities in respect to the early Continental machines would support a charge of infringement based on the breach of his implied promise as coinventor and assignor not to disclose the confidential subject matter of the patent application or to participate in an adverse use thereof if the Lockerbie patent were valid. See Ackermans v. General Motors Corp., 202 F. 2d 642, 645 (4th Cir.1953).

█ Defendant Fruhling is not chargeable with personal liability in this case. It has not been shown that Fruhling acted beyond the scope of his du-

ties as president and stockholder of Continental in inducing Dunckel, who was not under contract to Lockerbie, to accept a more favorable position with Continental, or in deciding that Continental was to undertake a new manufacturing line of air agitated ice builders which constituted 10 per cent of the business of the already established solvent corporation. See Powder Power Tool Corporation v. Powder Actuated Tool Company, Inc., 230 F.2d 409, 414 (7th Cir.1956).

## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

While the foregoing decision sets forth in detail the court's findings of fact and conclusions of law, they may be summarized as follows.

FINDINGS OF FACT

1. This action is for unfair competition and for patent infringement.

2. The action arises under the patent laws of the United States.

3. The subject matter of the single claim of the Lockerbie patent reads on the prior art of the Borgerd patent and the McCormick-Deering milk cooling machine.

4. Treating the subject matter of the claim of the Lockerbie patent as consisting of separate elements, the court finds that the elements of structure and disposition of a refrigerant coil in an insulated tank through which water is recirculated to an external heat exchanger and the air agitation means within said tank, consisting of air nozzles disposed in specific relation to the refrigerant coil structure, are disclosed in the prior art of the Borgerd patent considered together with the Vilter water cooling machine. Further, the separate elements perform the same function in the Lockerbie patent structure as in the prior art —the cooling of water by the uniform melting of ice banks formed on the refrigerant coil by gaseous agitation of the water adjacent to the ice banks.

5. The prior art of the Vilter water cooling machine and similar devices was not before the patent office, and there was misunderstanding as to the significance of the use of a baffle in the Borgerd patent during the proceedings on the application for the Lockerbie patent.

6. The prior art references of the Borgerd patent and the Vilter water cooling machine were in the public domain prior to the development of the subject matter of the Lockerbie patent and the filing of the patent application therefor.

7. Defendants Continental and Fruhling do not stand in the relationship of joint venturers with Dunckel and are not the instrumentalities of Dunckel in the manufacture and sale of the accused devices.

8. The specifications of the claim of the Lockerbie patent read on the eleven Continental machines manufactured and sold prior to issuance of the Lockerbie patent.

9. Dunckel disclosed the information of the patent application and participated in the use thereof adversely to the interests of his coinventors and of his assignee prior to issuance of the Lockerbie patent.

10. There is substantial identity of means, operation, and result not affected by a change in location of air nozzles between the Lockerbie patent and the ninety-five Continental machines manufactured after issuance of the Lockerbie patent.

11. One of defendants' motives in changing the location of the air nozzles in the later Continental machine was the avoidance of infringement.

12. Disclaimer of prior patent application claim and amendment specifying precise location of air nozzle was not in response to an objection based on prior art in proceedings before the patent office.

13. The subject matter of the alleged trade secret was fully and publicly disclosed prior to alleged misappropriation thereof by Dunckel.

14. Defendant Fruhling acted within the scope of his duties as president and stockholder of the corporate defendant in the preparation for and the manufacture and sale of the accused devices.

CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter of this action and over the parties.

2. The patent in issue is invalid for lack of invention over the prior art.

3. The patent in issue is invalid because of the obviousness of its subject matter to a person skilled in the art in light of the old elements aggregated in Lockerbie which are found in the prior art.

4. The presumption of validity arising from issuance of the Lockerbie patent is weakened because pertinent art was not before the patent office. This presumption was overcome by a clear showing of lack of invention and obviousness on the record in this case.

5. Defendant Dunckel, the assignor of the patent in suit, is not estopped to deny validity of the assigned patent.

6. If defendant Dunckel were estopped to deny validity, the estoppel would not be applicable to defendants Continental and Fruhling because they are not in privity with Dunckel.

7. If the patent in issue were valid, there would be infringement of its claim by the manufacture and sale of Continental machines prior to issuance of the Lockerbie patent because of Dunckel's disclosure and use of patent application information in breach of implied promise to hold such information confidential. Dunckel personally, as well as the corporate defendant, would be liable for infringement by prepatent issuance machines.

8. If the patent were valid, there would be no estoppel by file wrapper history to claim infringement by device showing minor technical change within range of equivalents of claim of Lockerbie patent.

9. Ninety-five Continental machines manufactured after issuance of patent would infringe said patent if it were valid.

10. The disclosure and use of nonsecret and nonconfidential subject matter are not actionable.

11. Defendant Fruhling would not be personally liable for infringement of the claim of the Lockerbie patent if said patent were valid or for misappropriation of any trade secret if said cause were actionable.

The clerk is hereby directed to enter judgment in accordance with the foregoing findings of fact and conclusions of law for the defendants and each of them, dismissing the action and for their costs and disbursements herein.