**William M. JOHNSON, Plaintiff,**

v.

**HUGHES INVESTMENTS, INC., an Oregon corporation, Leland G. Hughes, and Jackie Hughes, husband and wife, Defendants.**

**Civ. No. 86–6397–E.**

United States District Court, D. Oregon.

June 9, 1988.

---

Timothy J. Harold, Harms, Harold, Leahy & Pace, Springfield, Or., for plaintiff.

Robert H. Fraser, Leif A. Palmer, Luvaas, Cobb, Richards & Fraser, P.C., Eugene, Or., for defendants.

## OPINION

FRYE, District Judge.

The matter before the court is the motion of defendants Hughes Investments, Inc., and Leland G. Hughes, and Jackie Hughes (The Hughes) for summary judgment as to plaintiff's claim of infringement of United States Patent No. 4,715,681, a patent on a handlebar-mount bicycle reflector. The Hughes also move for an award of attorney fees under 35 U.S.C. § 285. Plaintiff, William M. Johnson, alleges infringement of two patents disclosing handlebar-mount bicycle reflector devices.

## UNDISPUTED FACTS

Johnson first revealed his invention to the Hughes in late 1985. Johnson and the Hughes expected that the Hughes would buy Johnson's patent rights in the invention. In fact, the parties worked together at redesigning and redeveloping the product to make it more marketable and more salable during late 1985 and early 1986. At the same time the parties were negotiating the terms of the sale of the patent rights from Johnson to the Hughes.

Between December 1985 and March 3, 1986 the Hughes paid Johnson $23,000. Included in that amount is a check for $2,000. On the check for $2,000 is a notation: "Purchase of Bike Brites II Patent. Balance of $9,000. 70/30%." Bike brites II refers to the handlebar-mount bicycle reflector at issue here.

On March 3, 1986 Johnson applied to the patent office for a patent on the handlebar-mount bicycle reflector, and the Hughes prepared the product for manufacture and sale.

On July 26, 1986, the Hughes sold five units of handlebar-mount bicycle reflectors to Hutch's Bicycle Shop. The Hughes have no ownership or other type of interest in Hutch's Bicycle Shop.

On August 25, 1986 Johnson filed this complaint for infringement of his patent. On September 9, 1987, the patent office filed a notice of allowance of patent. On December 29, 1987, the patent was issued.

The Hughes sold no handlebar-mount bicycle reflectors after the patent was actually issued, although they received payment in January, 1988 for some units which were sold prior to the time the patent was issued.[1]

1. On January 28, 1987 this case was dismissed pursuant to a court negotiated settlement agree-

## APPLICABLE STANDARD

■ Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issues of material fact. Once this initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Probative evidence must be produced; merely restating the allegations of the complaint is insufficient to satisfy this burden.

## SUMMARY OF ARGUMENTS

The Hughes argue that Johnson had no protected property rights in his invention until after the patent was actually issued on December 29, 1987, and that they have sold no units of Johnson's invention since the patent was issued.

Johnson states under oath "That as of April 14, 1988, the handlebar-mount reflector ...was being sold at Hutch's Bicycle Shops in Eugene, Oregon and Springfield, Oregon by the defendants" (Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment and Attorney's Fees, Affidavit of William M. Johnson p. 2). Johnson argues that the Hughes may be held for liable for infringement occurring before the patent was issued because of a confidential relationship between the parties and that, in any event, the Hughes are liable for inducing infringement.

The Hughes reply that there was no confidential relationship between the parties and that their tenuous relationship with Hutch's did not as a matter of law constitute inducement to infringe.

## ANALYSIS AND RULING

[2] The term of patent protection runs from the date of issuance, *Woodbridge v. United States,* 263 U.S. 50, 44 S.Ct. 45, 68 L.Ed. 159 (1923), and, generally speaking, the sale of an infringing product before a patent is issued does not constitute infringement or inducement to infringe. *Foster v. American Mach. & Foundry Co.,* 492 F.2d 1317 (2d Cir.) *cert. denied,* 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974). Therefore, no suit to enforce a patent right may be maintained until after the patent has issued. *Gayler v. Wilder,* 51 U.S. (10 How.) 477, 13 L.Ed. 504 (1850).

[3] The only relevant events that have occurred since the issuance of the patent are the receipt by the Hughes of payment in January, 1988, for an earlier shipment of product to Hutch's Bicycle Shop and the offering for sale by Hutch's Bicycle Shop of the infringing device in 1988. The date of delivery and not the date of receipt of payment for the product is the determining factor in an analysis of infringement by sale of a patented device. See *Aluminum Extrusion Co. v. Soule Steel Co.,* 260 F.Supp. 221 (C.D.Cal.1966). In *Aluminum Extrusion,* the alleged act of infringement was the installation of the infringing windows in a certain building. Installation of the windows was completed before the patent was issued, but payment was not made until after the patent was issued. In finding that there was no infringement, the court held "that the date the work ceased is the determinative date and the receipt of the final payment of the work after the issue date of the patent would not constitute infringement."

Furthermore, the sale of the infringing devices by Hutch's Bike Shop does not constitute infringement by the Hughes, as there is no evidence of a relationship between the Hughes and Hutch's. Moreover, the sale of the infringing devices to Hutch's Bicycle Shop by the Hughes does not constitute inducement to infringe, as

---

ment between the parties. The settlement agreement allowed the Hughes to continue to produce and market the handlebar-mount bicy-

cle reflectors for an agreed upon period of time. On September 8, 1987, the court allowed Johnson to reinstate this action.

that sale took place before the patent was issued.

There is an exception to the general rule prohibiting recovery on an infringement which occurs before the patent was issued. The exception applies where the parties have shared a confidential relationship. *Ackermans v. General Motors Corp.*, 202 F.2d 642 (4th Cir.), *cert. denied*, 345 U.S. 996, 73 S.Ct. 1139, 97 L.Ed. 1403 (1953). In that case, plaintiff disclosed his invention to defendant before the patent was issued with a view toward selling or licensing the invention to defendant. Defendant declined to buy plaintiff's invention or to take a license, but then started producing and selling the product. The court allowed plaintiff to recover damages from the date of disclosure rather than the date the patent was issued, citing and quoting from *Hoeltke v. C.M. Kemp Mfg. Co.*, 80 F.2d 912, 922–23 (4th Cir.), *cert. denied*, 298 U.S. 673, 56 S.Ct. 938, 80 L.Ed. 1395 (1936):

> The general rule, of course, is that the monopoly of a patent which entitles a patentee to damages for infringement commences only when the patent is granted; but where, in advance of the granting of a patent, an invention is disclosed to one who, in breach of the confidence thus reposed, manufactures and sells articles embodying the invention, such person should be held liable for the profits and damages resulting therefrom, not under the patent statutes, but upon the principle that equity will not permit one to unjustly enrich himself at the expense of another.... Complainant offered to disclose his invention to defendant with a view of selling it to defendant ...Defendant was interested in the proposition and invited the disclosure, otherwise it would not have seen complainant's specification and drawings until the patent was granted. While there was no express agreement that defendant was to hold the information so disclosed as a confidential matter and to make no use of it unless it should purchase the invention, we think that in equity and good conscience such an agreement was implied; and having obtained the disclosure under such circumstances, defendant

ought not to be heard to say that there was no obligation to respect the confidence thus reposed in it. 202 F.2d at 645–46.

 Johnson submits evidence that a confidential relationship existed between him and the Hughes prior to the time the patent was issued and argues that the Hughes were obligated to respect that relationship. The Hughes deny that a confidential relationship existed or could fairly be implied, noting in particular that they paid $23,000 to Johnson for his invention. Johnson, however, characterizes that payment as an installment on a larger obligation which he maintains was at least $100,000. These disputes in fact represent a material issue for resolution at trial.

Defendant's motion for partial summary judgment and an award of attorney's fees is denied.